2011 ME 127

### RELIABLE COPY SERVICE, INC.

v.

### Michael LIBERTY and Liberty Group, Inc.

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 27, 2011.

Decided: Dec. 15, 2011.

Russel B. Pierce, Jr., Esq., and Darya I. Haag, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellants Michael Liberty and Liberty Group, Inc.

Aaron P. Burns, Esq., Pearce & Dow, LLC, Portland, for appellee Reliable Copy Service, Inc.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Michael Liberty and Liberty Group, Inc. (Liberty) appeal from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) denying their M.R. Civ. P. 60(b) motion for relief from a default judgment that Reliable Copy Service, Inc. (Reliable) obtained in Pennsylvania and sought to enforce in Maine pursuant to the Uniform Enforcement of Foreign Judgments Act, 14 M.R.S. §§ 8001–8008 (2010). Liberty argues that the Pennsylvania default judgment is not enforceable in Maine because the Pennsylvania default judgment was, and remains, void. *See* M.R. Civ. P. 60(b)(4). We disagree and affirm.

## I. BACKGROUND

[¶ 2] In 2006, Liberty retained Reliable to provide photocopy, optical character recognition, and coding services in connection with litigation then pending in the United States District Court for the Eastern District of Pennsylvania. Three years later, on April 8, 2009, Reliable filed a "Complaint with Notice to Defend within 20 days" in the Pennsylvania Court of Common Pleas (Pennsylvania Court) in an effort to collect on the sums owed for the services Reliable rendered to Liberty as part of the suit in federal court. Reliable served Liberty with the Pennsylvania complaint by certified mail, return receipt requested, pursuant to Pennsylvania service of process rules. *See* Pa. R. Civ. P. 403, 404(2). On April 10, 2009, Liberty signed the return receipts, but at no point did Liberty answer or formally respond to the Pennsylvania complaint. On May 4, 2009, Reliable served Liberty by certified mail, return receipt requested, with a "Notice of Intention to Take Default." Liberty signed the return receipts for the default notice on May 6, 2009, which gave it ten days to respond to the default notice, but again made no effort to answer or formally respond to the default notice.

[¶ 3] On May 27, 2009, more than twenty-one days after Liberty had been served the notice of intention to take default, Reliable filed a "Praecipe to Enter Default Judgment," and the Pennsylvania Court entered a default judgment against Liberty in the amount of $93,869.70. This amount apparently included accrued interest on the damages at a rate of six percent. Subsequently, on June 8, 2009, without providing notice to Liberty, Reliable moved to vacate the original judgment, but not the default, and filed an "Amended Praecipe to Enter Default Judgment" requesting the Pennsylvania Court to enter another judgment in the amount of $136,-761.38—to reflect a contractual interest rate of 18% on the damages (allegedly understated as 6% in Reliable's May 2009 "Praecipe for Entry of Default Judgment") and its contractual attorney fees, which Reliable calculated to be $20,424.61. On June 9, 2009, the Pennsylvania Court granted Reliable's motion and the prothonotary delivered to Liberty notice of the amended default judgment.

[¶ 4] On June 26, 2009, Liberty, through counsel, filed a "Petition to Open Default Judgment" in the Pennsylvania Court. *See* Pa. R. Civ. P. 237.3. The Pennsylvania Court denied the petition on September 3, 2009. On September 14, 2009, Liberty filed a motion requesting that the Pennsylvania Court reconsider its initial denial of Liberty's petition to open. While the Pennsylvania Court's decision on Liberty's motion to reconsider was pending, Liberty filed an appeal with the Pennsylvania Superior Court, which was dismissed as moot on October 2, 2009. *See* Pa. R.App. P.1925(a)(1) (requiring Pennsylvania trial judges to issue a "brief opinion" that explains the reasoning behind an order before an appeal may proceed).

[¶ 5] On January 8, 2010, the Pennsylvania Court issued a written opinion explaining the reasoning behind the denial of Liberty's petition to open. The Pennsylvania Court reasoned that Liberty's admittedly mistaken belief that Reliable could not effect service of the Pennsylvania complaint by certified mail pursuant to Pa. R. Civ. P. 403 and 402(2) did not constitute the type of justifiable error that would excuse a failure to answer or defend against the lawsuit. The Pennsylvania Court concluded that Liberty "attempted to avoid [its] legal responsibilities by choosing to ignore both the complaint and the Notice of Intent to Take Default." On February 24, 2010, the Pennsylvania judgment became final when Liberty voluntarily withdrew an appeal filed with the Pennsylvania Superior Court.

[¶ 6] On March 18, 2010, following the end of the litigation in the Pennsylvania Court, Reliable filed a "Notice of Filing of Foreign Judgment" pursuant to Maine's Uniform Enforcement of Foreign Judgments Act (Enforcement Act), 14 M.R.S. §§ 8001–8010, in the Superior Court in Cumberland County. On May 25, 2010, the Superior Court entered a judgment in favor of Reliable in the amount of $136,761.38 and the clerk attempted to deliver notice of the judgment to Liberty.[1] On July 8, 2011, the Superior Court Clerk's Office issued a writ of execution at Reliable's request. Approximately seven months after the Pennsylvania default judgment was entered in Superior Court, Liberty filed a motion for relief from judgment pursuant to M.R. Civ. P. 55(c) and 60(b). The Superior Court denied the motion. The court concluded that service of process by certified mail under Pennsylvania's service of process rules did not offend Liberty's due process rights; that the method of mail service used by Reliable established personal jurisdiction over Liberty in the Pennsylvania Court; and that Liberty had not carried its burden of proving that its procedural due process rights were violated when Reliable moved, without notice, to vacate the initial May 2009 "Praecipe for Entry Default Judgment" and seek, in the June 2009 "Amended Praecipe to Enter Default Judgment," a judgment in the greater amount of $136,761.38. Liberty then filed this timely appeal.

## II. DISCUSSION

 [¶ 7] Liberty maintains that the Pennsylvania default judgment is not enforceable in Maine, by operation of the Enforcement Act,[2] because service of the

---

1. The Superior Court docket record indicates that copy of the notice was returned undeliverable on June 2, 2010.

2. "The Enforcement Act creates an expedited procedure for enforcing federal and state judgments that are entitled to full faith and credit in Maine." *GENUJO LOK Beteiligungs GmbH v. Zorn*, 2008 ME 50, ¶ 9, 943 A.2d 573 (citing 14 M.R.S. § 8002 (2007)).

Pennsylvania complaint by certified mail pursuant to Pennsylvania service of process rules was ineffective to vest the Pennsylvania Court with personal jurisdiction over it. Liberty also contends that its procedural due process rights were violated when Reliable requested and received from the Pennsylvania Court an increased damages award of $136,761.38 without providing Liberty with notice and an opportunity to be heard.

[¶ 8] A Maine trial court's ruling on a Rule 60(b) motion is ordinarily subject to the deferential abuse of discretion standard on appeal. *Foley v. Adam*, 638 A.2d 718, 719 (Me.1994). The standard differs, however, in circumstances where a party seeking relief from a judgment alleges a jurisdictional defect or other due process violation pursuant to M.R. Civ. P. 60(b)(4) that would render the judgment void. *Warren v. Waterville Urban Renewal Auth.*, 290 A.2d 362, 365–66 (Me.1972); *accord Land Use Regulation Comm'n v. Tuck*, 490 A.2d 649, 652 (Me. 1985). "If the judgment is void, 'there is no room ... for the court to exercise discretion'—the judgment must be set aside." *Foley*, 638 A.2d at 719 (quoting *Warren*, 290 A.2d at 365).

## A. Personal Jurisdiction

[¶ 9] We find no merit to Liberty's argument that the Pennsylvania Court did not acquire personal jurisdiction over it by virtue of Reliable's purported failure to serve the Pennsylvania complaint in accordance with the Maine Rules of Civil Procedure. The fact that the Enforcement Act subjects foreign judgments sought to be enforced in Maine to the "procedures, defenses, and proceedings for reopening, vacating or staying the judgment" as would be available in the Maine trial courts, 14 M.R.S. § 8003, does not dictate that Reliable was required to employ Maine service of process rules for the Pennsylvania Court to obtain personal jurisdiction over Liberty individually, or over his corporate namesake. *See Lewien v. Cohen*, 432 A.2d 800, 804–05 (Me.1981) ("Under Maine law and federal constitutional dictates of due process, service of process effected in a manner most reasonably calculated to apprise the defendant in fact of the proceeding is necessary to insure that *the court in which an action is initiated* gains personal jurisdiction over the parties." (emphasis added)).

[¶ 10] By their express terms, the Pennsylvania service of process rules authorize out-of-state defendants to be served by certified mail. Pennsylvania Rule of Civil Procedure 403 provides that "[i]f a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent." Pennsylvania Rule of Civil Procedure 404, which covers "Service Outside the Commonwealth," provides that "[o]riginal process shall be served outside the Commonwealth within ninety days of ... the filing of the complaint ... (2) by mail in the manner provided by Rule 403."

[¶ 11] There is no question that the method of service employed by Reliable was not only "reasonably calculated to give [Liberty] notice of the pendency of the [Pennsylvania] action" within the technical requirements of the Pennsylvania rules, *Gaeth v. Deacon*, 2009 ME 9, ¶ 23, 964 A.2d 621 (citing *Schroeder v. City of New York*, 371 U.S. 208, 212–13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962)), but also gave Liberty actual notice of the Pennsylvania suit. *Cf. Vargelis v. Minieri*, 620 A.2d 275, 276 (Me.1993) ("If the defendant received actual notice by the method of service used, the court should hesitate in finding the service insufficient for some technical noncompliance [with Maine per-

sonal service rules]." (quotation marks omitted)). Having executed the return receipts, both for the Pennsylvania complaint and the "Notice of Intention to Take Default," and then having failed to answer or dutifully defend against the Pennsylvania suit, Liberty can have no qualms with the method of service used or the exercise of personal jurisdiction over it in the Pennsylvania Court, and neither do we.

### B. Procedural Due Process

[¶ 12] Liberty also argues that its procedural due process rights were violated at the point when Reliable, without providing additional notice, moved to vacate the original judgment of $93,869.70 and filed an "Amended Praecipe to Enter a Default Judgment" in the increased amount of $136,761.38. Liberty maintains that once Reliable sought a judgment significantly greater than the one found in the original default judgment, due process would require that it be provided an opportunity to contest the amended default judgment at a hearing. A claim that the Pennsylvania default judgment was obtained in a manner that patently offends due process triggers the same type of nondiscretionary review on appeal as the purported jurisdictional defect discussed above. *See Tuck,* 490 A.2d at 652 ("[A] party may move to set aside a judgment for voidness under Rule 60(b)(4) if the court which rendered it . . . acts in a manner inconsistent with due process." (citation omitted)); *United Student Aid Funds, Inc. v. Espinosa,* —— U.S. ——, 130 S.Ct.

1367, 176 L.Ed.2d 158, 169–70 (2010) (citing *United States v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 661 (1st Cir.1990)) (construing Fed.R.Civ.P. 60(b)(4) to afford relief not only for jurisdictional defects, but also for "a violation of due process that deprives a party of a notice or the opportunity to be heard"). We must therefore determine whether the increased default judgment that Reliable requested, and the Pennsylvania Court ultimately entered, is void for want of some incursion on Liberty's claimed right to contest the amended default amount at a hearing.[3] In seeking relief from the amended Pennsylvania default judgment before the Superior Court of this state, Liberty "bore the burden of producing competent evidence to support [its] motion." *Foley,* 638 A.2d at 719 (citing *New Me. Nat'l Bank v. Nemon,* 588 A.2d 1191, 1193 (Me.1991)).

[¶ 13] Liberty's procedural due process claim fails on the merits for want of some discernable proof that Reliable was not entitled to seek the substantially higher damage award in the first place. Liberty's argument hinges entirely on the premise that Reliable was not entitled to seek damages, according to the original Pennsylvania complaint, in the amended amount of $136,761.38. Liberty did not provide the Superior Court with a copy of the Pennsylvania complaint or any other evidence that might have exposed whether the amended damages award, granted without notice, was above and beyond what Reliable was entitled to receive pursuant to its original pleading. Liberty provided no evidence to

---

**3.** Prior to filing the M.R. Civ. P. 60(b) motion in the Superior Court of this State, Liberty made no effort to pursue its due process claim by prosecuting an appeal with Pennsylvania Superior Court. *See Reville v. Reville,* 370 A.2d 249, 253–54 (Me.1977). Because Liberty's due process claim fails on the merits, the court exercised proper judicial restraint by not expressly deciding whether Liberty's due process arguments should oth-

erwise be barred by principles of res judicata. The court aptly concluded that "whether the Pennsylvania proceedings would be entitled to res judicata effect may depend on whether those proceedings complied with due process"—an issue the Pennsylvania Superior Court never had the opportunity to address on account of Liberty's voluntary withdrawal of the Pennsylvania appeal.

support the bare assertion that the amended judgment had "the substantive effect" of amending the Pennsylvania complaint. *See* 3 Charles Harvey, *Maine Civil Practice* § 60:1 at 294 (3d. ed. 2011) ("Mere oral argument or allegation of fact in the [M.R. Civ. P. 60(b)] motion cannot be substituted for proof."). Liberty thus failed to carry its burden of proving that its due process rights were in fact "denied when the judgment amount was changed." Absent that showing, Liberty similarly failed to rebut the presumptive validity of the Pennsylvania default judgment. *Warren*, 290 A.2d at 366.

[¶ 14] The Pennsylvania judgment suffers from no jurisdictional defect or due process impediment that would render it void pursuant to M.R. Civ. P. 60(b)(4). The amended damages calculation contained in Reliable's "Amended Praecipe to Enter Default Judgment," which was granted by the Pennsylvania Court, is properly enforceable in Maine pursuant to the Enforcement Act.

The entry is:

Judgment affirmed.